**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Chart Industries, Inc.,** | ) | **CASE NO. 1:12 CV 2354** |
| | ) | |
| Plaintiff, | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **Amato Spagnoletti,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| Defendant. | ) | |

**INTRODUCTION**

This matter is before the Court upon Plaintiff's Motion for a Temporary Restraining Order (Doc. 4). This case involves a non-compete clause. For the reasons that follow, the motion is DENIED.

**FACTS**

Plaintiff, Chart Industries, Inc., filed this lawsuit against defendant, Amato Spagnoletti, alleging wrongdoing in connection with Spanoletti's termination of employment with plaintiff.

Defendant worked for plaintiff for approximately 14 years in various roles. Most recently, defendant held the position of Vice President of LNG Sales. LNG, which stands for

1

"liquefied natural gas," is the fastest growing segment of plaintiff's Distribution and Storage division. It appears that defendant had responsibility for sales in North America.

In November of 2005, as part of plaintiff's initial public offering, defendant signed a Management Stockholder's Agreement ("Agreement"). The Agreement was amended and re-executed in July of 2006 and is primarily directed to the acquisition and disposition of company stock held by management. The Agreement, however, contains the following clause, in relevant part:

> 6.14. <u>Confidential Information and Covenant not to Compete</u>.
>
> (a) In consideration of the Company entering into this Agreement with the Management Stockholder, the Management Stockholder hereby agrees [not to] directly or indirectly, (i) at any time during or after the Management Stockholder's employment, disclose any Confidential Information...; or (ii) at any time during the Management Stockholder's employment with the Company...and for a period of one (1) year thereafter, directly or indirectly (A) act as a[n]...employee... in any business that directly or indirectly competes with the business of the Company or any of its subsidiaries...., (B) solicit customers or clients of the Company or its subsidiaries... or (C) solicit or offer employment to any person who has been employed by the Company or any of its subsidiaries at any time during the twelve (12) months immediately preceding the termination of the Management Stockholder's employment....

In September of 2012, defendant received an offer of employment to work at Taylor-Wharton International, Inc. ("TWI") as President of TWI's Cryogenics Division. In this role, defendant will be responsible for an entire business unit with three components– LNG, industrial gas, and cryoscience. Defendant will oversee engineering, marketing, customer service, human resources, finance, and IT functions. In discharging his duties, defendant will spend a considerable amount of time on matters outside North America. Defendant accepted the offer and resigned from plaintiff's employment on September 10, 2012. Just prior to resigning, defendant exercised stock options totaling $950,000.

Shortly thereafter, plaintiff received resignation notices from two LNG sales managers, who along with defendant, constituted plaintiff's entire LNG sales team. Both managers reported directly to defendant and both accepted positions at TWI.

The parties do not appear to dispute that plaintiff and TWI are competitors.

Thereafter, plaintiff filed this lawsuit containing four claims for relief. Count one is a claim for breach of contract. Count two is a claim for breach of the duty of loyalty. Count three asserts inevitable disclosure of trade secrets and count four is a claim for tortious interference.

Plaintiff moves the Court for a temporary restraining order seeking to enjoin defendant from the following: rendering services to TWI, soliciting TWI's customers, offering employment to plaintiff's employees, divulging confidential information, and tortiously interfering with plaintiff's contractual relationships. Defendant opposes the motion.

**ANALYSIS**

Federal Rule of Civil Procedure 65 governs the issuance of temporary restraining orders and preliminary injunctions.

"When considering a motion for a preliminary [relief], the district court should consider four factors: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *Rock and Roll Hall of Fame and Museum, Inc. v. Gentile Productions*, 134 F.3d 749, 753 (6th Cir. 1998). *See also Memphis Planned Parenthood, Inc. v. Sundquist*, 175 F.3d 456, 460 (6th Cir. 1999); *Schenck v. City of Hudson*, 114 F.3d 590, 593 (6th Cir. 1997); *J.L. Spoons, Inc. v. O'Connor*, 190 F.R.D. 433, 437-438 (N.D. Ohio 1999); *Crews v.*

*Radio 1330, Inc.*, 435 F.Supp. 1002, 1005 (N.D. Ohio 1977).

A district court must make specific findings concerning each of these factors, unless analysis of fewer facts is dispositive of the issue. *Six Clinics Holding Corp., II v. Cafcomp Systems, Inc.*, 119 F.3d 393, 399 (6th Cir. 1997). However, not all the factors need be fully established for a temporary restraining order or injunction to be proper. *Michigan State AFL-CIO v. Miller*, 103 F.3d 1240, 1249 (6th Cir. 1997). None is a prerequisite to relief; rather, they should be balanced. *Connection Distributing Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998). While none of the factors are given controlling weight, a preliminary injunction should not be issued where there is no likelihood of success on the merits. *Michigan State AFL-CIO*, 103 F.3d at 1249. Where the court concludes that there is no likelihood of success on the merits, it need not address the other three factors. *Id*.

Plaintiff argues that the first factor, i.e., likelihood of success on the merits, weighs in favor of issuing a temporary restraining order because plaintiff will prevail in establishing that defendant breached the covenant not to compete and engaged in tortious interference.

With regard to the breach of contract claim, plaintiff points out that Delaware[1] courts routinely recognize that injunctive relief is appropriate for the violation of restrictive employment covenants. According to plaintiff, the covenant not to compete is reasonable in both time and geographic scope. Plaintiff claims that Delaware courts find time restrictions of up to three years to be reasonable. As such, a one-year restriction is enforceable. Plaintiff

---

[1] The Agreement provides for the application of Delaware law. In addition, the Agreement contains an arbitration provision. Neither party, however, disputes that this Court can address the instant motion seeking a temporary restraining order.

4

further argues that the geographic restrictions, although common, are not required to uphold a covenant not to compete.  Plaintiff operates worldwide.  In addition, defendant was charged with developing relationships with key customers, who conduct business worldwide.  Moreover, in his new role with TWI, defendant will be overseeing an international division.  Thus, a geographic restriction of any kind will serve no useful purpose.

In response, defendant argues that the covenant at issue is overbroad because it imposes a restraint far greater than required to protect a legitimate business interest.  For example, it prohibits defendant from working for any competitor in any capacity whatsoever.  Defendant argues that there is a significant difference between the tasks he performed for plaintiff and the work he agreed to perform for TWI.  At TWI, defendant will be in charge of an entire business unit, only a fraction of which involves the sale of LNG products.  Defendant further claims that he has limited knowledge of the technical aspects of plaintiff's products.  Defendant notes that he is willing to perform functions entirely unrelated to his work with plaintiff.  Yet, plaintiff will not agree to the arrangement.  As such, because the covenant prevents him from any employment whatsoever, even if it is wholly unrelated to his past work with plaintiff, the covenant is overly broad.  Defendant further argues that the time and geographic restrictions are overbroad.  Defendant claims that the time restriction should be triggered by the termination of First Reserve's role as investor, as that is the true reason the non-compete was placed in the Agreement.  In addition, the non-compete contains no geographic restriction, which has the effect of prohibiting defendant from working anywhere in the world in the industry in which he spent nearly the majority of his career.

In order to determine whether plaintiff is entitled to injunctive relief, the Court must first

determine whether the non-competition clause in the Agreement is enforceable.  Under Delaware law, such a restrictive covenant is enforceable provided it is "reasonable in geographic scope and temporal duration, [ ] advances a legitimate economic interest of the party seeking enforcement, and [ ] survives a balancing of the equities...."  *Hough Associates, Inc. v. Hill*, 2007 WL 148751 (Del. Ch. 2007).  Because the enforcement of such a covenant requires specific performance, plaintiff must establish these elements by clear and convincing evidence.  *Id* at *14.  This standard must be considered by the Court in determining whether plaintiff has established a strong likelihood of success on the merits.  *Id*. (*citing Cirrus Holding Co., Ltd. v. Cirrus Indus., Inc.*, 794 A.2d 1191, 1201 (Del Ch. 2001)).

As an initial matter, the Court finds that the one-year temporal restriction is reasonable.  As plaintiff notes, Delaware courts routinely find one-year covenants permissible. *Id*. at * 6; *All Pro Maid, Inc. V. Layton,* 2004 WL 1878784 (Del. Ch. 2004)(one-year covenant upheld as reasonable); *Capital Bakers v. Leahy*, 178 A. 648 (Del. Ch. 1935)(one-year covenant permissible, but three-state geographic restriction overly broad).

The Court, however, finds that plaintiff fails to demonstrate a strong likelihood that it will succeed in establishing that the covenant is enforceable absent a geographic or job-scope restriction.  In general, Delaware courts rely on geographic restrictions in upholding restrictive covenants.  *See e.g., Weichert Co. of Pennsylvania v. Young*, 2007 WL 4372823 (Del.Ch. 2007)(25-mile restrictive covenant upheld).  Nonetheless, covenants lacking a geographic restriction are not uneforceable *per se* under Delaware law.  *Gas Oil Products, Inc. of Delaware v. Kabino*, 1987 WL 18432 at *2 (Del.Ch. 1987)(court imposed a geographic restriction in a covenant where agreement lacked such a restriction).  *See also*, *Delaware Exp. Shuttle, Inc v.*

*Older*, 2002 WL 31458243 (Del.Ch. 2002)(reading a geographic restriction into the covenant in order to enforce it). Above all, the covenant must be designed to protect the legitimate economic interests of the party seeking enforcement.

Here, plaintiff asks the Court to essentially prohibit defendant from working in the industry in which he spent the vast majority of his career. While the Court will not say that such a restriction could *never* be upheld, the Court finds that on the facts presented thus far, such a restriction is overly broad. Importantly, neither party asks the Court to impose a geographic or any other limitation on the covenant. Rather, plaintiff stands by its request to preclude defendant from working for any entity that competes directly (or indirectly) in any capacity anywhere in the world. The Court finds that plaintiff fails to establish that such a broad prohibition is reasonably tailored to protecting a legitimate business interest. Plaintiff argues that as Vice President of LNG Sales, defendant had access to confidential and proprietary information, customer lists, business and marketing strategies, and the like. Notably, however, plaintiff does not allege that plaintiff's position provided access to this type of information regarding other business lines. Nearly all of the express allegations in the complaint are directed at plaintiff's acquisition and threatened exposure of information related to LNG. (*See*, Compl. ¶¶ 17, 18, 19, 26, 41, 43, 53). Yet, on its face, the covenant would prohibit defendant from accepting employment from an entity that competes with plaintiff in other areas, even if that entity does not sell LNG products. And it does so on a worldwide basis. While the Court appreciates that a national or even international covenant might be possible given the global economy, the lack of any geographic restriction whatsoever must be highly scrutinized because it has the effect of entirely prohibiting an employee from earning a living in the industry in which the employee is

7

experienced. At this stage in the proceedings, the Court is not convinced that the lack of geographic restriction is enforceable given that defendant is alleged to have obtained a competitive advantage in only one product line offered by plaintiff.[2]

Plaintiff cites to O*'Leary v. Telecom Resource Service, LLC*, 2011 WL 379300 (Del. Ch. 2011) in support of its position. There, the Court upheld a non-compete agreement entered into by plaintiffs as a result of the sale of their business. The court noted that a nationwide restriction was reasonable in light of the fact that defendant had customers throughout the nation. The court relied on *Gas Oil Prods.*, *supra*, in concluding that Delaware courts have permitted "nationwide" non-compete agreements in certain circumstances. In *Gas Oil Prods*., however, the court *imposed* a geographic restriction limited to "the Glasgow District" because no geographic restriction was contained in the original non-compete agreement. Moreover, other courts in which a nationwide covenant was recognized, limited the employee from competing or soliciting customers with whom the employee had contact. *See, e.g., Research & Trading Corp. v. Pfuhl*, 1992 WL 345465 (Del.Ch.1992). Plaintiff further cites to *Research Trading Corp. v. Powell*, 468 A.2d 1301 (Del. Ch. 1983), in which the court upheld a nationwide restriction. The court, however, never addressed the issue of whether the nationwide scope of the restriction was permissible. Rather, the parties argued only as to whether "continued employment" constitutes sufficient consideration to support a covenant not to compete. Plaintiff fails to present the Court with a case in which a court upheld an international ban on working for any competitor in any

---

[2] The Court is careful to note that it is not opining that job restrictions must be in non-compete agreements in order for them to be enforceable. Rather, a worldwide restriction will be carefully scrutinized in order to determine whether it is tied to a legitimate economic interest.

8

capacity.

The Court finds that plaintiff fails to establish a strong likelihood of success on the merits with respect to the breach of contract claim. As such, the remaining factors need on be addressed.

With regard to count two, plaintiff argues that it is likely to succeed on its tortious interference claim because two of the LNG sales managers who reported to defendant left to work for TWI. According to plaintiff, the "circumstances surrounding their resignations and their prior reporting relationship to [defendant] strongly suggest" that defendant had some part in recruiting them to work for TWI. In response, defendant provides an affidavit in which he avers that he did not solicit any employees to leave plaintiff for TWI. At this stage in the litigation, the Court cannot say that plaintiff has established a likelihood of succeeding on this claim. Moreover, plaintiff does not establish that it will suffer irreparable harm as a result of the loss of these two sales managers. Accordingly, temporary injunctive relief is not proper.

### **CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for a Temporary Restraining Order is DENIED.

IT IS SO ORDERED.

      /s/ Patricia A. Gaughan  
PATRICIA A. GAUGHAN  
United States District Judge

Dated: 9/28/12